# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Tammy C., <br><br> Plaintiff <br><br> v. <br><br> Andrew M. Saul, <br><br> Defendant | REPORT AND RECOMMENDATION <br><br><br> 1:17-CV-00137-DB-CMR <br><br> District Judge Dee Benson <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiff, Tammy C., pursuant to 42 U.S.C. § 405(g), filed this action asking this Court[1] to reverse or remand the final agency decision denying her Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act (Act). The Administrative Law Judge (ALJ) determined that she did not qualify as disabled within the meaning of the Act (ECF 15, Certified Administrative Transcript (Tr.) 15–34). Having carefully considered the parties' memoranda and the complete record in this matter, the undersigned recommends the Court AFFIRM the ALJ's decision.

## I. BACKGROUND

On August 1, 2013, Plaintiff filed an application for SSI alleging disability beginning June 1, 2001 (Tr. 68–69). At this time Plaintiff was 32 years of age, was married, and had five children (Tr. 163–165). She dropped out of school in the 9th grade but later earned her GED (Tr. 22). She last worked in 1998 at Wal-Mart when she was 18 years of age (Tr. 188). At the time she submitted her application, she alleged disability due to depression, bipolar disorder, and

---

[1] This matter is referred to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on all dispositive matters (ECF 16; ECF 33).

migraines (Tr. 187).

The ALJ followed the five-step sequential evaluation process for evaluating disability claims (Tr. 15–34). *See* 20 C.F.R. § 416.920(a)(4). The ALJ found that Plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine, obesity, major depressive disorder, and anxiety disorder, but that her impairments did not meet or equal the severity of listed impairments (Tr. 17–18). The ALJ then found that Plaintiff retained the residual functional capacity (RFC) to perform light work with limitations (Tr. 20–33). Consistent with a vocational expert's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy (Tr. 34). The ALJ concluded that Plaintiff had failed to establish disability under the Act (Tr. 34).

The Appeals Council then denied Plaintiff's request for review (Tr. 1–4), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981; 422.210(a). This appeal followed.

## II.  STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner of the Social Security Administration (SSA). The Court reviews the ALJ's decision to determine whether the record as a whole contains substantial evidence in support of the factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The findings shall stand if supported by substantial evidence. 42 U.S.C. §§ 405(g); 1383(c)(3). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). While substantial evidence is "more than a mere scintilla," it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

2

(quotations and citations omitted). Under this deferential standard, this Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

### III. ANALYSIS

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the ALJ employs a five-part sequential evaluation. *See* 20 C.F.R. § 416.920(a)(4). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See id.* The claimant has the initial burden of establishing the disability in the first four steps. 42 U.S.C. § 423(d)(5)(A), applicable to SSI cases through § 1382c(a)(3)(H)(i); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, a limited burden shifts to the SSA to show that the claimant retains the ability to perform other work existing in the national economy. *Id.*

3

Plaintiff brings numerous claims on appeal, asserting that the ALJ (1) did not consider all of her impairments at steps two and three; (2) erred in assessing Plaintiff's RFC and the hypothetical that was referenced; (3) erred in his consideration of the medical expert's testimony; (4) erred in relying on the vocational expert's testimony; and (5) engaged in an incorrect assessment of credibility (ECF 18, Plaintiff's Opening Brief (Pl. Br.) 2–3). The Court addresses the arguments below.

### a. The ALJ Did Not Err at Step Two.

Plaintiff's step-two arguments fail. Plaintiff argues that the ALJ erred when he (1) did not include neuropathy (completely failed to mention it) and (2) found that migraine headaches and hip dysplasia were not "severe" impairments (Pl. Br. 9–12). However, a claimant must make only a de minims showing to advance beyond step two. *Allman v. Colvin*, 813 F.3d 1326, 1320 (10th Cir. 2016). Further, a claimant need only establish, and an ALJ need only find, *one* severe impairment. *Id.* In the present matter, the ALJ found not only one severe impairment but multiple severe impairments and moved beyond step two. "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at this step but must proceed to the next step." *Id.* The "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that least one other impairment is severe." *Id.* Moreover, the ALJ considered these non-severe impairments in assessing Plaintiff's RFC (Tr. 21–28). *Id.* (citing 20 C.F.R. § 404.1545(e)). There was therefore no reversible error at step two.

### b. The ALJ Did Not Err at Step Three.

Plaintiff (at times very vaguely) contends that the ALJ erred at step three of the sequential evaluation process by failing to consider or properly consider the impairments of neuropathy, migraine headaches, hip issues, and obesity (Pl. Br. 9–12). Step three of the

sequential evaluation process "asks whether any 'medically severe impairment,' alone or in combination with other impairments," meets or equals "any of a number of listed impairments so severe as to preclude 'substantial gainful employment.'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the claimant's impairment meets or equals the listing, the ALJ must find the impairment disabling. *See* 20 C.F.R. § 416.920(d). If the impairment does not meet or equal the listing, the claimant must establish at step four that her impairment prevents her from performing work she previously performed. *See id.* § 416.920(e), (f).

With respect to neuropathy, Plaintiff contends the "ALJ fails to mention it as an impairment, even to exclude it" (Pl. Br. 9). Other than a single citation to the record (Tr. 260), Plaintiff does not identify which listing should have been considered and was excluded. The Plaintiff has not sufficiently briefed this argument. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of . . . constructing arguments and searching the record."). Contrary to Plaintiff's unsupported contention, the ALJ considered "all the medical evidence" and found the impairments "singly or in combination" did "not meet the criteria set forth under Sections 1.04, 12.04 or 12.06" (Tr. 18). The ALJ specifically addressed physical limitations under section 1.04 and mental limitations under sections 12.04 and 12.06 (*id.*).

Plaintiff also argues the ALJ's finding that that migraines were non-severe was incorrect, citing to *Barrus v. Berryhill,* No. 1:16-CV-00056-JNP-EJF, 2017 WL 4736728 (D. Utah Oct. 19, 2017) (Pl. Br. 9–10). The court notes the *Barrus* case is not controlling and is distinguishable from the present facts. Unlike the *Barrus* case, the ALJ did not make a conclusory finding. Plaintiff failed to point to evidence demonstrating that her headaches met or equaled the 11.03 listing. The ALJ relied on medical expert Dr. Anne Winkler who concluded that headaches

5

occurred one to three times per month, were "controlled on Topamax," and there was no expectation that claimant would miss work due to headaches (Tr. 18, 31, 857–58). The ALJ also relied on Dr. Juan Fuentes who did not report 11.03 medical listings (Tr. 18).

Plaintiff next argues the ALJ's conclusion that the "record fails to show the claimant complained of hip pain" is contrary to the record (Pl. Br. 11). Plaintiff cites to what she contends demonstrates a record of hip pain. Preliminarily, the court notes Plaintiff does not establish which specific listing was not addressed. Further, the evidence Plaintiff relies on does not establish Plaintiff met her burden of establishing a record of hip pain. Plaintiff simply cites to the record at 464 indicating Plaintiff had a hip x-ray (Pl. Br. 11). Record 464 does not appear to be a hip x-ray but rather a "physical therapy initial evaluation report" (Tr. 464). Plaintiff further states "additional imaging was performed because of 'History pain hip and pelvic pain . . . [sic],'" citing to the record at 667 (Pl. Br. 11). However, this document does not indicate the imaging was done *because of* hip pain and seems to indicate Plaintiff was seen for a cervical spine scan (Tr. 666–67). Regardless, Plaintiff does not cite to *any* testimony or other records to provide further context or interpretation for this record.

Plaintiff also cites to the record at 804 where it references pelvic pain and to a dictionary definition that the "pelvis includes the hipbones on the sides" (Pl. Br. 11). Plaintiff does not offer any support within the record for this interpretation of the record. Plaintiff argues because she was "prescribed pain killers for pelvic pain" that somehow supports a finding and/or record of hip dysplasia (Pl. Br. 11). Plaintiff again fails to identify any testimony or other documents that show that pelvic pain demonstrates hip dysplasia. These conclusory arguments do not contradict the ALJ's finding. The court further notes that the hip issue was discussed and addressed as part of the RFC analysis where the ALJ again noted that while "imaging shows

6

some hip dysplasia, the record fails to show any complaints of hip pain" (Tr. 28, 613–14). *See Fischer-Ross*, 431 F.3d at 733 ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.").

In a single conclusory sentence, Plaintiff next argues the ALJ did not evaluate her credibility properly in finding hip dysplasia was not a severe impairment (Pl. Br. 11). Plaintiff fails to support this statement with any evidence from the record. *Garrett*, 425 F.3d at 840 ("[T]he court cannot take on the responsibility of . . . constructing arguments . . ."). As noted above, the ALJ included a lengthy and detailed discussion of the hip claim and found the claim of hip dysplasia was inconsistent with the record (Tr. 17, 28). Given the conclusory argument, the court will not disturb this ruling.

Again without citing anything in the record, Plaintiff also argues that the ALJ erred in failing to evaluate her obesity under SSR 02-01p (Pl. Br. 12). The court is unclear if Plaintiff is arguing hip pain must have been considered in conjunction with obesity or if arthritis must have been considered in conjunction with obesity. Either way, the Plaintiff simply fails to support the argument with record evidence, and the court will not construct this argument. *Id.* at 840. An ALJ must consider "the combined effects of obesity with other impairments" and "evaluate each case based on the information in the case record." SSR 02-1p, 2002 WL 34686281, at *1, 6. Here, there was no evidence in the record that supported imposing additional restrictions due to Plaintiff's obesity.

    **c. The ALJ Did Not Err in the RFC Determination.**

A claimant's RFC reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments. 20 C.F.R. § 416.945.

7

The step four analysis involves three phases:

In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citations and quotation marks omitted). In determining the claimant's RFC, the decision maker considers all of the claimant's medically determinable impairments, including those considered not "severe." 20 C.F.R. § 416.945(a)(2). Here, the ALJ reasonably considered the evidence and found that it supported limiting Plaintiff to a range of light work.

      **i.**      **The ALJ properly addressed mental limitations in the RFC.**

Plaintiff argues the ALJ did not properly consider SSR 96-8, 1996 WL 374184, or assess her RFC on a function-by-function basis in evaluating the mental limitations (Pl. Br. 12–13). Plaintiff fails to cite to any record evidence that would support additional limitations that should have been considered. Plaintiff baldly states that the ALJ should have evaluated work-related mental activities like the abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions, respond appropriately to supervision, co-workers and work situations and deal with changes in routine work settings" (Pl. Br. 12 (Quoting SSR 96-8)).

The ALJ included a detailed and lengthy discussion of mental process (among other limitations) and at times, the inconsistencies with which Plaintiff reported her symptoms in comparison to the medical providers' assessments. The ALJ noted that Plaintiff could attend the duration of her children's programs which lasted at least an hour and were attended by many

8

other parents and that Plaintiff had good energy given that she woke up at 4:30 a.m. to get her husband off to work and then got her children off by 7 and 7:30 a.m., did chores, made dinner, and engaged with her children (Tr. 29). Plaintiff's ability to concentrate and think were also addressed by Dr. Tanya Colledge who noted that Plaintiff's "attention and concentration were adequate during his examination" (Tr. 329). The ALJ also referenced Dr. Lori Kotter's opinion who examined Plaintiff's intellectual levels of functioning. Dr. Kotter indicated that Plaintiff had an IQ score of 94 (which is within average range), verbal comprehension score of 91 (which is low average to average), a perceptual reasoning score of 109 (average) and a working memory score of 95 (also average) (Tr. 27, 30). The ALJ's finding that Plaintiff could perform goal-oriented but not fast-paced work (Tr. 20–33) is substantially support by the record. The additional limitations that Plaintiff references were not.

      **ii.**      **The ALJ reasonably weighed the medical opinions to find that Plaintiff could perform a range of light work with no fast-paced work.**

The ALJ's decision demonstrates that he considered the medical opinions, the medical and other evidence, as well as Plaintiff's subjective complaints (Tr. 20–33). Plaintiff suggests that the ALJ was required to consider every regulatory factor when considering the opinions (Pl. Br. 20). The Tenth Circuit has rejected this argument. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (recognizing that an ALJ is not required to "apply expressly" every factor for weighing opinion evidence).

Plaintiff also argues that the ALJ could only discount Dr. Winkler's opinion on the basis of a contrary medical opinion (Pl. Br. 19). That is incorrect. *See* 20 C.F.R. § 416.927 (listing the factors that an ALJ considers when evaluating a medical opinion). The Tenth Circuit has rejected Plaintiff's argument that an ALJ "plays doctor" when he discounts a medical opinion based on inconsistent medical evidence. *See Trujillo v. Colvin*, 626 F. App'x 749, 753 (10th Cir.

9

2015) (rejecting the claimant's argument that the ALJ "gave greater weight to his own lay opinion than to the medical expert's opinion" when the ALJ discounted the doctor's opinion based on the psychological evidence in the record). While an ALJ cannot pick and choose within an uncontradicted medical opinion without explanation, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), that did not occur here.

      First, Dr. Winkler's opinion was not uncontradicted—it was contradicted by the opinions of Drs. Greenberg and Peterson that Plaintiff did not have a "severe" physical impairment, let alone any functional limitations arising from a physical impairment (Tr. 80, 91–92). *See Rael v. Berryhill*, 678 F. App'x 690, 695 (10th Cir. 2017) ("But Rael's argument ignores a key factor present in *Haga* . . . but not present here—*i.e.*, [one doctor's] non-exertional findings were contradicted; [two other doctors] both opined that Rael could occasionally perform postural activities and had no reaching limitations."). Furthermore, the ALJ explained why he found that parts of Dr. Winkler's opinion were supported by the record while other parts were not (*see* Tr. 30–32). This was entirely appropriate.

      The reasons the ALJ gave for discounting portions of Dr. Winkler's opinion were well-supported by the record (Tr. 30–32). Plaintiff has failed to challenge any of the reasons the ALJ provided. The court therefore deems this argument waived. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review."); *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument." (citation and quotation omitted)).

10

### d. The ALJ Did Not Err at Step Five.

#### i. Hypothetical

Plaintiff argues that because the hypothetical the ALJ presented to the vocational expert (VE) was not the same one the ALJ ultimately assessed as her RFC, the Commissioner did not meet his burden at step five (Pl. Br. 13, 20). While it is true that the hypothetical was different, this discrepancy was to Plaintiff's benefit—the ALJ asked the expert about a hypothetical individual who was even *more* limited than Plaintiff (*compare* Tr. 20 (mental RFC limited to goal-oriented work but not fast-paced work) *with* Tr. 57–59 (limiting the hypothetical individuals to simple work-related judgments and decisions; understanding, remembering, and carrying out only short and simple instructions; and performing goal-oriented but not fast-paced work)). Because the expert identified jobs that an individual with even more limitations than Plaintiff could perform, any discrepancy was harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations omitted)).

Plaintiff next challenges the ALJ's reliance on the small products assembler job, arguing that its general educational development (GED) reasoning level of 2 was inconsistent with a limitation to goal-oriented work but not fast-paced work (Pl. Br. 20–21). Plaintiff points to cases that held that a restriction to simple or unskilled work may be inconsistent with GED reasoning level 3 (Pl. Br. 21). The ALJ however, did not limit Plaintiff to simple or unskilled work, and Plaintiff has failed to establish how the RFC limit of no fast-paced work equals simple or unskilled work. Given that the Plaintiff did not develop this argument, the court will not disturb the ALJ's decision. *Garrett*, 425 F.3d at 840. Furthermore, even if the ALJ had limited Plaintiff to simple and unskilled work, the Tenth Circuit has found that such RFC limitations are fully

consistent with GED reasoning level 2. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008).

Plaintiff protests that two of the occupations identified by the expert were inconsistent with Dr. Winkler's opinion (Pl. Br. 21–22). As discussed above, the ALJ reasonably discounted Dr. Winkler's opinion and declined to include all of its limitations in Plaintiff's RFC (Tr. 30–32). An ALJ can rely on a VE's testimony in such circumstances. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (finding no error where the ALJ's hypothetical included all of the limitations he properly determined the claimant to have); *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding no error when the ALJ relied upon a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment).

Plaintiff also argues that the ALJ did not determine that the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT). However, the ALJ—consistent with SSR 00-4p, 2000 WL 1898704, at *4—asked the VE after each hypothetical if her testimony was consistent with DOT (*see* Tr. 58 ("Is that consistent with the DOT?"), 59 ("Is that consistent with the DOT?")). The VE responded in the affirmative on both occasions (Tr. 58, 59). However, after Plaintiff's counsel cross-examined the expert, she provided additional testimony, which the ALJ ultimately relied on at step five (Tr. 62–63). Part of that additional testimony involved reduction in the number of available jobs (*see* Tr. 62–63). The ALJ asked the expert, "It's my understanding that the DOT doesn't provide for the estimated job reductions. What did you base that on?" (Tr. 63). The expert responded, "On my experience . . ." (Tr. 63).

A reasonable reading of the VE's testimony was that she reduced the number of jobs to account for the mental limitation to no fast-paced jobs (*see* Tr. 62–63). Recognizing that some of the jobs she identified might require fast-paced work, the expert reduced the numbers to

12

address her testimony's inconsistency with the DOT (Tr. 62–63).  The ALJ thus reasonably found that the expert's testimony was inconsistent with the DOT, but the inconsistency was explained by the expert's experience (Tr. 34).  Such a finding was fully consistent with the law.  *See Haddock v. Apfel*, 196 F.3d 1084, 1091–92 (10th Cir. 1999) (discussing possible circumstances where an ALJ may rely on VE testimony which conflicts with the DOT); SSR 00-4p, 2000 WL 1898704, at *2–3 (explaining that a reasonable explanation for conflicts with the DOT include a VE's experience).  In sum, the ALJ reasonably relied on the VE's testimony to find that Plaintiff could perform work existing in significant numbers in the national economy.  The ALJ thus properly concluded that Plaintiff had failed to meet the strict standard to prove disability under the Act.

## RECOMMENDATION

Based on the foregoing, the undersigned finds the ALJ's decision is supported by substantial evidence and the correct legal standards were applied.  Thus, the undersigned recommends the Commissioner's decision be AFFIRMED.

## NOTICE

Copies of this Report and Recommendation are being mailed to all parties who are hereby notified of their right to object.  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 11 September 2019.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah